UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

JAMES W. HAWKINS,

                Appellant           6:09 -CV- 0164   (LEK)
                                                6:09 -CV- 0342   (LEK)

     -against-

PAUL A. LEVINE,
Chapter 11 Trustee,

                Appellee.

In re:
  Reserve Capital Corp.                                  Bankr. Case No. 03-60071
  Hawkins Development LLC                   Bankr. Case No. 03-60072
  James W. & Lori Jo Hawkins                 Bankr. Case No. 03-60073
  Hawkins Family, LLC                                Bankr. Case No. 03-60074
  Hawkins Manufactured Housing, Inc.      Bankr. Case No. 03-60075
  Forest View, LLC                                    Bankr. Case No. 03-60076
  Wooded Estates, LLC                               Bankr. Case No. 03-60077
  Tioga Park, LLC                                       Bankr. Case No. 03-60078
                                                            Bankr. Case No. 03-60071

                Debtors,

## **DECISION AND ORDER**

      On February 23, 2009, Appellant James W. Hawkins ("Hawkins"), the debtor in the instant matter, filed with this Court a Notice of Appeal from an Order of the United States Bankruptcy Court for the Northern District of New York (Hon. Stephen D. Gerling, *B.J.*), entered on January 16, 2009, granting the motion for sanctions by Appellee Paul A. Levine ("Levine"), the Chapter 11 Trustee, pursuant to Federal Rule of Bankruptcy Procedure 9011.  Appellant now contends that the Bankruptcy Court erred by imposing sanctions, arguing that there was no

factual or legal basis to justify the imposition of sanctions. For the reasons which follow, the January 19, 2009 Decision of the Bankruptcy Court is affirmed.

### I.     BACKGROUND

Appellant Hawkins is at the center of the eight separate entities and individuals ("Debtors") who filed Chapter 11 petitions on January 7, 2003. Reserve Capital Corporation is a corporation that was engaged in the business of construction and installment contract financing of mobile homes. Hawkins Development, LLC was engaged in real estate development. Hawkins Family, LLC acted as a real estate holding company. Hawkins Manufactured Housing, Inc. was engaged in the selling and financing of mobile homes. Wooded Estates, LLC and Forest View, Inc., owned and operated mobile home communities. Tioga Park, LLC owned a horse racing track. The Bankruptcy Court subsequently granted Debtors' motion to jointly administer the estates. In March 2004, the Debtors, their post-petition lender Southern Tier Acquisitions, LLC, and creditor Asolare II, LLC, reached an agreement whereby these plan proponents would present a joint plan of reorganization for Tioga Park, and separately, liquidating plans for the remaining Debtors. On May 17, 2004, the reorganization plan was amended by the Bankruptcy Court's Amending Order.

Subsequently, in June 2004, the Bankruptcy Court affirmed the joint Chapter 11 plan of Tioga Park. The joint plan provided, in part, that the estate of James Hawkins was to receive: (1) 55% of the $100,000 consulting fee due to him under a five year consulting agreement previously negotiated by the parties; and (2) a 2% equity interest in the post confirmation transferee of the

2

assets of Tioga Park, LLC.  In a Memorandum Agreement attached to the plan, it was further provided that the personal residence of James and Lori Hawkins in Colesville, NY would be conveyed to Asolare II in partial satisfaction of its secured claim.  Asolare II was to then sell the property back to James and Lori Hawkins for $100,000.  Southern Tier Acquisitions and Jeffrey Gural, per the Agreement, were to provide funding to James Hawkins to facilitate the purchase of his home and to satisfy certain priority tax claims.

On August 12, 2004, the United States Trustee moved to covert the pending cases to Chapter 7 or, in the alternative, appoint a Trustee pursuant to 11 U.S.C. § 1104.  By Order dated September 16, 2004, the Bankruptcy Court appointed Appellee Paul Levine, Esq. as the Chapter 11 Trustee.  Reserve Capital Corp. v. Levine, No. 6:05-CV-00743, 2007 WL 329179 at * 2 (N.D.N.Y. 2007).  In November 2004, the Trustee filed a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 to compromise certain terms of the Reserve Capital Chapter 11 settlement.  In the motion, the Trustee sought to liquidate three sources of money to help fund the bankruptcy estates: (1) a present value lump sum payment of the estate's share of the consulting fee; (2) a payment in exchange for the estate's conveyance of their 2% equity interest in Tioga Downs, LLC; and (3) a payment on account of the agreement to fund money into the bankruptcy estates in recognition of priority tax claims.

On March 7, 2005 the Bankruptcy Court issued a Decision and Order, holding that the Trustee's compromise was fair and reasonable.  It allowed the Trustee to enter into the settlements that he had proposed.  Thereafter, an Order of the Bankruptcy Court, dated June 7, 2006, authorized the Trustee to appoint a real estate broker to sell the Hawkins' residence.  As the Bankruptcy Court had determined that any rights Hawkins believed he had under the

Memorandum Agreement predating the appointment of the Chapter 11 Trustee and approved Compromise should be addressed as a contract matter in state court, an eviction proceeding for the residence occupied by Hawkins was commenced before Hon. Jeffrey A. Tait, Justice of the New York State Supreme Court, Broome County; ultimately, in February 2008, summary judgment was granted in favor of the Trustee based upon findings that the Hawkins Family, LLC was the undisputed owner of the property, the Hawkins were tenants and that the terms of the Memorandum Agreement had never been performed.

The Debtors appealed the March 7, 2005 Decision and Order holding that the compromise was fair and reasonable. On January 30, 2007, this Court issued a Decision and Order, Reserve Capital Corp. v. Levine, No. 6:05-CV-00743, 2007 WL 329179 (N.D.N.Y. 2007), affirming in part and remanding to the Bankruptcy Court one specific issue for resolution: whether the March 7, 2005 Decision and Order was an impermissible post-confirmation modification. On July 6, 2007, on remand, the Bankruptcy Court held that the March 2005 Decision did not constitute a post-confirmation modification of the Amended Tioga Park Plan. This Court affirmed that ruling on March 13, 2009 and dismissed Hawkins' appeal. In that decision, the Court explained that the Appellant's appeal on the single modification issue did not present an opportunity to re-litigate settled aspects of his matter; particularly, where the "Court had already determined in its prior decision that the Debtors failed to raise any issue regarding the perfection of Asolare II's security interest, that there was no fraud on the part of Asolare II, that the Bankruptcy Court's refusal to remove the Trustee was proper, and that the Bankruptcy Court did not err in refusing to compel compliance with the consulting agreement." Decision and Order of March 13, 2009 at 6.

On January 13, 2009, this Court reviewed and dismissed Hawkins' additional appeals of the Bankruptcy Court's April 29, 2008 Order denying Appellant's motion to hold the Trustee in contempt of the Bankruptcy Court's order of confirmation of the plan of reorganization and July 8, 2008 Order approving the Trustee's application for an order approving the sale of the Colesville residence and granting a compromise to give the proceeds of the sale to Asolare II, LLC.  The Court found that the sale was moot and that the Trustee's actions were taken with the approval of the Bankruptcy Court and only after he disclosed the nature of the underlying transactions, including the payment of attorneys' fees.

Atop this lengthy procedural background, the latest appeal by Hawkins comes before the Court because of the Bankruptcy Court's allocation of sanctions against both Hawkins, proceeding *pro se* in this appeal, and Craig Fritzsch, his attorney during all of the previous litigation, under Rule 9011.  The basis of the sanctions, following an April 23, 2008 motion by the Trustee, was Hawkins' March 20, 2008 motion seeking to hold the Trustee in contempt of a pre-existing Order of the Bankruptcy Court.  That contempt motion was heard and denied on April 22, 2008, and, as referenced above, this Court dismissed Hawkins' appeal of the Decision as without merit.  It was the maintenance of this contempt motion by Hawkins and his attorney, despite a warning by Trustee to withdraw the motion, that, in the judgment of the Bankruptcy Court, warranted a sanction in an amount equal to the attorney's fees expended in connection with services rendered in defending the Contempt Motion.  The sum came to $5742.50, of which two thirds were charged to the lawyer, Fritzsch, and one third to Hawkins.

## II.   STANDARD OF REVIEW

In reviewing the rulings of a bankruptcy court, a district court applies the clearly erroneous standard to a bankruptcy court's conclusions of fact, and reviews *de novo* conclusions of law. Yarinsky v. Saratoga Springs Plastic Surgery, 310 B.R. 493, 498 (N.D.N.Y. 2004) (Hurd, J.) (citing In re Manville Forest Prods. Corp., 209 F.3d 125, 128 (2d Cir. 2000)); In re Petition of Bd. of Dirs. of Hopewell Int'l Inst. Ltd., 275 B.R. 699, 703 (Bankr. S.D.N.Y. 2002); Fed. R. Bankr. P. 8013. Mixed questions of law and fact are reviewed *de novo*. Ernst & Young v. Bankr. Servs. (In re CBI Holding Co.), 311 B.R. 350, 360 (S.D.N.Y. 2004) (citing to In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003); In re AroChem Corp., 176 F.3d 610, 620 (2d Cir. 1999)). "A bankruptcy court's decision regarding an award of fees and sanctions is subject to review for an abuse of discretion." Yarinsky, 310 B.R. at 498; Cooter & Gell v. Artmarx Corp., 496 U.S. 384, 405 (1990) (Rule 11 sanctions are subject to review for abuse of discretion.). Legal errors, of course, constitute an abuse of discretion. Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990)

## III.   DISCUSSION

The question before the Court is whether the Bankruptcy Court's decision that sanctions should issue against Hawkins and his lawyer, as well as its determination of the amount and allocation of those sanctions, was a proper exercise of its discretion. Rule 9011 allows and directs a bankruptcy court to impose sanctions upon an attorney or party who signs and submits a pleading or other motion, with limited exceptions, that he or she should know, after reasonable

inquiry, contains misstatements, baseless contentions or frivolous arguments or is done with an improper purpose. In relevant part, it provides:

> b) Representations to the court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
>
> (c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
> * * *
> (2) *Nature of sanction; limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

FED. R. BANKR. P. 9011.

Rule 9011 is similar to Federal Rule of Civil Procedure 11 in its pre-1993 form, such that case law under that iteration of the Rule 11 has informed the interpretation of the bankruptcy Rule, "containing only such modifications as are appropriate in bankruptcy matters." See In re

Cohoes Indus. Terminal, Inc., 931 F.2d 222, 227 (2d Cir. 1991) (citation and quotation omitted). Generally, to impose sanctions under the Rule, a "bankruptcy court must find that an attorney has submitted a claim that has no chance of success under existing precedents and that fails to advance a 'reasonable argument to extend, modify or reverse the law as it stands.'" Id. (quoting Mareno, 910 F.2d at 1047). "Sanctions shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986). In other words, a "court may sanction on the basis of Rule 9011 if an attorney advances a frivolous argument." In re Cohoes Indus. Terminal, Inc., 931 F.2d at 227. The standard for evaluating the reasonableness of an attorney or party's potentially sanctionable submissions is an objective one; thus, a "good faith subjective belief in [the] validity" of a signed paper does not provide any safe harbor. See Sussman v. Bank of Israel, 56 F.3d 450, 456-57 (2d Cir. 1995) (discussing assorted cases applying the objective standard).

In the instant matter, as indicated *infra*, the Bankruptcy Court imposed sanctions based upon Hawkins' and his attorney's submission of a motion to hold the Trustee in contempt, which the court found to be frivolous and unreasonable. The contempt motion argued that actions taken by the Trustee to appoint a real estate broker, evict Hawkins from the Colesville residence and generally sell that property violated the Bankruptcy Court's June 2, 2004 Order confirming a reorganization plan for Tioga Park, LLC which included the Memorandum Agreement addressing the fate of the property; the Memorandum Agreement attached to that plan provided: that the property would be conveyed to Asolare II, LLC, that Hawkins, who was debtor-in-possession at the time, had the right to repurchase the property from Asolare for the sum of

$100,000, plus taxes due, that Asolare and Hawkins agreed to execute a contract for purchase and sale of the property which would provide a time of the essence closing date within 30 days of confirmation of the Tioga Park LLC reorganization plan, and that several entities agreed to provide purchase money financing to Hawkins in the sum of $100,000 for the transaction. The motion for sanctions asserted that the Trustee was in contempt of the June 1, 2004 Order by selling the property pursuant to the Bankruptcy Court's July 8, 2008 Order approving the sale and undertaking other actions towards selling the property. The premise of Appellant's argument was that the Memorandum Agreement was incorporated as a valid and enforceable set of terms of the post-Compromise plan approved by the Bankruptcy Court.

The Bankruptcy Court granted the Trustee's motion for sanctions based on section (b)(1) and (3) of Rule 9011, as the Trustee argued that Appellant's contempt motion was intended to harass and cause delay and that the facts and applicable law rendered Hawkins' motion baseless. The court found Hawkins' contempt motion to be "objectively unreasonable given the fact that the Trustee was merely carrying out his statutory and fiduciary duty to the estates of the Jointly Administered Debtors." January 16, 2009 Bankruptcy Memorandum Decision-Order. At the time when the Memorandum Agreement was made and referenced in the original Tioga Park Plan, there was no trustee in any of the Debtors' cases. The subsequent appointment of Appellee rendered him a fiduciary for the bankruptcy estate, of which the Colesville residence was an asset. As the Bankruptcy Court noted, it is clearly within the Trustee's authority to seek approval of the sale of property of the estate. In its discussion of why sanctions should issue, the court explained that "[t]he fact that it remained estate property is reaffirmed by the provision in the Memorandum Agreement that without an Order of this Court excluding the property from the

administration of their Estate, it remained property of the Debtors' Estate. . . . As such, it was subject to disposition by the Trustee for the benefit of the Debtors' creditors upon his appointment." January 16, 2009 Bankruptcy Memorandum Decision-Order.

In addressing Hawkins' contentions surrounding the effect of the Memorandum Agreement attached to the Tioga plan, the court found that Hawkins' arguments had already been raised and rejected and were otherwise not remotely meritorious. It reiterated that regardless of whether or not the Memorandum Agreement was incorporated into the Tioga plan or was a distinct agreement, the Agreement constituted an independent contract between the parties. The Bankruptcy Court had already ruled in a previous proceeding that whatever rights Hawkins believed he possessed under the Memorandum Agreement should be presented in state court. Accordingly, it was in state court that an eviction order was issued against Hawkins after the judge found that the Memorandum Agreement had not been performed and that Hawkins was, in fact, a tenant of Hawkins Family, LLC, an entity in bankruptcy overseen by the Trustee. Under the Agreement, it was expected that the Debtors' properties would be liquidated, that Asolare would bid on and purchase the Colesville property, which would thus remove the residence from the Hawkins Family, LLC estate. When the Trustee was appointed several months after the confirmation of Tioga plan that had the Agreement attached, the Colesville property, still belonging to the Hawkins Family, LCC bankruptcy estate, automatically became an asset for the Trustee to administer. No action had been taken under the terms of the Memorandum Agreement or by other separate means to transfer the Colesville property to Asolare so as to take the property out of the estate.

Given these essential facts, the Bankruptcy Court's denial of Hawkins' contempt motion,

upheld by this Court, appears inevitable; the decision to impose sanctions under Rule 9011, on the motion of Appellees, is logical and well within the discretion of that court. The various assertions contained within Hawkins' motion, and repeated in part in the instant appeal, that Trustee's actions to bring about the sale of the Colesville residence were in contempt of the Bankruptcy Court's Order confirming the Tioga plan prior to the appointment of the Trustee or in contempt of the subsequent compromised plan simply have no basis. The Bankruptcy Court, concluding its analysis of why sanctions were proper, determined that:

> A review of the docket of this case and the various orders of this and other courts simply does not support the allegedly noble purpose being pursued by Fritzsch and Hawkins in filing the Contempt Motion. Beginning with the Trustee's Motion to Compromise in November 2004 in which he very clearly asserted at ¶ 50 that he was accepting payment of $70,000 for application towards repayment of priority sales tax claims "without prejudice to the rights of Southern Tier Acquisition, LLC and Jeffrey Gural to contest any further obligation to Mr. Hawkins with respect to the purchase of his residence" and ending with the Eviction Order of Judge Tait, it is obvious to everyone involved in this case, except Fritzsch and Hawkins, that, at least with respect to the Trustee, Hawkins' rights in the Colesville property via the Memorandum Agreement no longer exist.

January 16, 2009 Bankruptcy Memorandum Decision-Order. This decision certainly does not abuse the discretion afford a bankruptcy court to find a party's submissions objectively unreasonable and worthy of sanction. Rather, the court, after reviewing the facts and arguments at issue and upon finding that Appellees were in in compliance with the "safe harbor" provision of Rule 9011(c)(1)(A), which provides that a party moving for sanctions must first allow the non-movant a certain period to withdraw the contested filing, resolved that Hawkins' and Fritzsch's "Contempt Motion and pleadings in the case delay[ed] the Trustee's administration of the estates since his appointment, [and] they also were without factual or legal basis given the various courts' orders in existence at the time of the motion." Id.

11

Nor does this Court find any abuse of discretion in the form and allocation of the sanction imposed.  Indeed, the sanction squarely fits within the provisions of Rule 9011(c)(2), stating that "if imposed on motion and warranted for effective deterrence, [a court may issue] an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  The Bankruptcy Court expressly considered that "the purpose of Rule 9011 sanctions is to deter rather than compensate the party seeking sanctions." (citing Edward D. Cavanagh, Rule 11 of the Federal Rules of Civil Procedure: The Case against Turning Back the Clock, 162 F.R.D. 383, 395 (1995) and Advisory Committee Notes to the 1993 Amendments to FED. R. CIV.P. 11).  January 16, 2009 Bankruptcy Memorandum Decision-Order.  This Court has no grounds to question or upset its ruling that, in light of the conduct by Hawkins and Fritzsch delaying distribution to creditors and causing the Trustee to incur costs to defend his actions on behalf of the creditors, an appropriate deterrence would be attorney's fees in the amount expended in defending against the unreasonable contempt motion.  Likewise, given the record of mutual responsibility for the sanctionable submissions by Hawkins and Fritzsch, the apportionment of the fees between them presents no abuse of discretion.  The Bankruptcy Court's Decision and Order for sanctions is, therefore, affirmed in its entirety.

### IV.   CONCLUSION

Accordingly, it is hereby

**ORDERED**, that the January 16, 2009 Memorandum Decision-Order of the Bankruptcy

Court is **AFFIRMED**; and it is further

**ORDERED**, that Appellant Hawkins' appeal, currently docketed at both Case No. 6:09-cv-164 and No. 6:09-cv-342, is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Order by regular mail upon the parties to this action.

**IT IS SO ORDERED**.

DATED:   March 30, 2010
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge